I will tell you, counsel, at the outset, given the nature of the issues in the case, I'll be a little lenient on time in the midst of the discussion. Thank you, Judge. Good morning. My name is Mick Seidel and I represent the appellants in this case. I'd like to reserve two minutes. This is a First Amendment case involving student speech. There are three principal issues in the appeal. First, whether the student's speech involving a petition requesting that a basketball coach resign is entitled to constitutional protection at all. Second, if it is entitled to constitutional protection, is there undisputed evidence in this record justifying the suspension of the basketball players because of that or a rational basis to believe that there was disruption of the schoolwork or interference with the rights of other students? And thirdly, whether or not there is a fact question presented on the question of whether the suspension was substantially motivated by a desire to punish or retaliate against the students for their exercise of their free speech rights. The latter issue, that is substantial motivation, was not addressed by the district court in its opinion, but it was raised by the school district in its motion and it's raised again in the response brief, so I intend to address it here in this argument. When you go through the three issues, particularly the second issue, would you make sure you not to participate in the basketball game and is there any distinction between what the student's rights may be with respect to the petition as opposed to their ability to express their views by withdrawing themselves unilaterally from a basketball game? Thank you, Judge. Let me address that right now and I'll come back to the issues in the order that I presented them, but I'm happy to address these in any order that you'd like because I think you've hit upon a very important issue and I want to address that specifically. On the issue of whether or not there is indisputable evidence of the kind of substantial disruption of the school work or the interference with the rights of other students, which is the test under Tinker, the district continually makes the error of relying upon a decision by the students to accept an option given to them by the principle of not playing in the game that night and ignore the actual speech in question, which is the petition. Any argument that is made, which I think is insufficient to meet the standard, has to do with the impact of not playing in the game that night. There is simply no argument even made, much less any evidence, that the speech contained in the petition itself caused any disruption of anything. It was simply the exercise of their right to petition and request, not demand, that the basketball coach resign. It was not even a petition delivered to the coach only. It contained a request and not a demand. And it was done that way because, as the evidence indicates in the record, the basketball coach had earlier promised that if the students simply told him they wanted him to resign, he would. And that's the genesis of the petition. Now, with respect to the issue of the substantial disruption alleged as a result of not playing in a basketball game, let me first point out that the district substitutes rhetoric for evidence. There are three words which, frankly, I'm weary of hearing about. Demand, ultimatum, and student strike. That rhetoric is used to attempt to elevate this into something akin to law and order. Well, let's assume it's none of those things. But still, in your initial comments, you used the phrase, disruption of the, you know, like, the education of the students. Correct. But I thought the test in Tinker would cover not just disruption of classrooms, but any disruption of school activities. And activities might be broader than the classroom. So, at least in my mind, subject to the argument and the views expressed by my colleagues, what I'm trying to understand is whether failing to board the bus is a disruption is a significant enough disruption of a school activity of organized sports. And that's the issue that's on my mind. So, if you can address that. I'd be happy. More in your argument, I'd appreciate it. Judge Gould, I don't disagree with you that, although the cases do use different phraseology, Tinker's words are disruption of school work or interference with the rights of other students. Other cases do phrase the test somewhat differently. But I believe at the bottom of it is the concept of interfering or disrupting the mission of the school to educate students. And whether that's in a classroom or in an extracurricular activity, I don't think makes a difference. The key point here, however, is that if we focus just on the decision not to play in the game that night, that was an option given to the players. It wasn't a decision made by the players as some type of a strike, which is the word that the school district would like this court to believe. It's not an issue of fact. Well, it's not, Your Honor, with respect, it's not an issue that the option was given. Both the administrators who testified and the students who testified in their depositions agreed that it was an option given to the students. The option was you don't have to get on the bus and play tonight. It was not said, and if you don't, nothing will happen. You'll stay on the team. We'll ignore it. Well, it was not said. The option was you don't have to get on the bus. Consequences of not getting on the bus were not assured players were they? Right. Your Honor, I'm just trying to address whether it was an option given to the students. And I place emphasis on that because when we talk about whether that's disruption, it's actually if that's disruption, I mean, it's disruption that was invited by the district because it was an option given to the students in response to their petition. Well, just to be clear, on the legal foundation, Tinker uses disruption of or material interference with school activities. So the absence of varsity players on the team could be construed as a material interference. It doesn't have to be a disruption in the sense of a student strike or anything like that where there's a lot of activity. No, but when we do look at cases where there has been a ruling that conduct was disruptive, it and I think there's a citation to a couple of strike cases. Those are completely different where the actual speech activity was organizing in a wide way. Well, but let's let's go to the chase. Okay. And I think we all are trying to understand here is you say that the petition itself didn't meet any of the Tinker language, because it neither disrupted nor materially interfered with anything. We'll take that for argument purposes. But when one shifts over to substantial number of players accepting himself from a game, it seems hard to believe that in the context of extracurricular activities being part of the school's mission, that the withdrawal of the students from the game isn't a material interference. Now, the question is whether or not that is causally linked to the petition, whether it is if they were given the option, as Judge Bea suggests, did that simply amount to the school trying to avoid a confrontation and a real disruption, a strike or something dramatic. And that may be a fact. But I think that's what we're trying to. I understand. And I apologize if I'm not addressing. I'm trying to address the issues is is that there. Let me focus on the actual decision not to play in the game. As Judge Bea indicated, there's no evidence that along with that option, there was any consequence communicated to the players. That is to say, the administrators who were present agree that they cannot recall making any statement that if you do not play in the game tonight, you will be suspended from the team. Does an employer have to tell an employee if you do not work, you will not be paid? I think, Your Honor, the answer to that is in judging whether or not the students were doing something to disrupt the school activities, they had no knowledge. They they believed it was permission. It was it was an option being given to them. So they might have believed that the question is, is it beyond a reasonable trial of facts? Influence to accept that. Well, I think that the testimony was that they believed if they were being given the option, they chose that option. They did not have any understanding. The parents were not involved in the meeting. They were not notified of this. They simply were told, if you do not board the bus tonight, you're not going to play tonight. And so they chose that option as a means of demonstrating the sincerity of their original petition. That that that they wanted the district to take hold of this issue. And the other option given to them of going through a mediation process, they chose not to to exercise because they believed, based on the statements being made in the meeting by the principal, that it was not going to be an impartial exercise. Now, whether or not you agree or disagree with that, the facts are indisputable that it was an option given to them. And so it's not the kind of disruption that that I think is contemplated in any of the cases under Tinker, that that disruption is a cause and effect between the speech itself and a disruption of the school activity. The petition didn't cause anything like that. I think as far as at least one judge is concerned on the issue of disruption, the petition is not on the table. Doing a petition doesn't disrupt school activities within the meaning of Tinker, so far as I'm concerned. But the not boarding the bus is very problematic. Now, for many schools, organized sports are an extremely important activity and they affect their alumni relations, they affect their relations in the community, they may affect their relations with other communities in the region with whom they compete. It's just extremely important. So if it weren't for the offer, you don't have to get on the bus. For me, at least as one judge, it would be a relatively easy call to say students who don't board a varsity bus for a game are disrupting school activities. But I'm not sure what the effect is of an offer that's given them as an option or an option without saying you will be sanctioned or you won't be sanctioned. So I need to think further about that. Your Honor, can I come to another point here? And that is that what you would want to have, I believe, in this record to support that type of a ruling is a clear declaration, clear evidence from the administrator as to the thought process, the analysis, the disruption, you know, the kind of thing if you look at there's a case, Island Tree School District versus PICO, which is a Supreme Court decision in which the it was a book banning case in which the Supreme Court remanded because the record, the summary judgment record did not have in it the evidence of that deliberative process that supported the argument for substantial disruption. In other words, there has to be evidence that the administrator actually took this action in rational fear of this disruption. The decision to suspend happened the next day with no explanation. The parents tried to the declarations of Mr. Crawford and Mr. Lipke. They attended the meeting and they said, can't we take a step back and discuss this? And the response was, no, the decision has been made. We're not turning back after the game. Yes, but that's that's not that's not the kind of evidence of deliberative thought process by an administrator that this action is rationally tied to a fear of some type of disruption. The other point that I want to make, Your Honor, one quick question. I mean, is it disruption of school activities just if if the school's going to lose games with a junior varsity that hasn't been trained as well as the varsity? I mean, students normally identify with their team. Parents identify with the team. They want the team to win. And normally the junior varsity, although they're very game and sporting people and they're doing the best they can, they're not going to win as often as a varsity. So, I mean, wouldn't it be disruptive if students on the varsity team to say we're not going to lose anybody? I'm not sure, however, that winning and losing is, in fact, the kind of educational activity that one doesn't have to be educational activity. At least as I'm understanding, Tinker just said school activities. So it could be the chess club and it's not a special thing about sports. Well, could be any school activity. That's disruptive. Well, with respect, there are other cases which when they use different phraseology they talk about. One case, for example, uses educational mission. I do believe that what is at stake here is disrupting the mission of a school to educate students. Including the right to protest. That's correct, Your Honor. All right, I think we have your point. I've been generous. You've had about 16 minutes. You'll have some time for rebuttal and I'll let counsel No, no, I'm going to cut you off if we weren't interested in hearing the argument. We're engaged. It's an important case. May it please the court, I'm Peter Mercereau on behalf of the respondents in this case. The Tinker court teaches that a flexible standard needs to be applied to these student speech cases. It also, would you agree, teaches that the public concern test is not the test that one applies in school cases since the students are not employees? Well, that's an interesting issue, Your Honor. It seems that that was what the district court seemed to think the standard was that it had to be that the subject matter of the protest had to be a matter of public concern. That's correct. Do you think that the conic rubric is imported into the school system? I do not think any of the student speech cases prior to this one that we could find did so. We urge this court to follow Judge Haggerty and to do so. Recently it was Levine who didn't do it. That's correct, Your Honor. Do you think that a petition about a harassing teacher is a matter of public concern? I think depending on the nature of the harassment, if it is a student grievance where the student himself is the victim of harassment, I think that's a matter for internal policies of the district to deal with. You don't think parents would have an interest to know that a teacher has singled out a student for sexual harassment or mental harassment? That's just a matter between the individual student and the teacher? I think under those circumstances, Your Honor, that would be a matter of public concern. Sexual harassment in the workplace, sexual abuse in a school district, yes. Mental harassment of a picking on a student? Yes, Your Honor, but I think in the context of this case, the petition, which is at ER 387, that raised the issues did not raise an issue of sexual abuse or sexual harassment. It was, we don't like our coach. No, it went on. He has made derogatory derogatory, derogatory, derogatory, derogatory, derogatory, derogatory, derogatory, derogatory derogatory remarks, made players uncomfortable playing for him. So it had to do with what was, it was verbally abusive. By Judge Fischer's mental harassment. Yes, I agree, Your Honor. Some of this is perception so that one student hears something and they think it's like Vince Lombardi and the other student thinks it's harassment. But at least from the way I understand the law, it is expressive speech in their petition, and if it requires, I don't, at least as one judge, don't think it requires a matter of public concern under our precedence. Right, and Your Honor, and so to me the issue turns on to disruption. And I don't have the disruption evidence. You have a little more time. Thank you, Your Honor. I would be the first to agree that if this petition were the sole basis for punishment in this case, we wouldn't be here. But we believe this record shows that the reason for the punishment, which was the suspension of these students, was in fact because of the significant disruptive effect on this district. And we believe there is not a serious question that when you have conduct that disrupts an organized varsity game for a school district like this that involves the hiring of referees, involves another school district, in this case Rainier, Oregon, which was the away game, which has its own students involved, there's a schedule involved, there are other people involved. Counsel, item 12 of your defendant's concise statement of facts took exactly that position. Yes. It was put in dispute by Mr. Seidel's memorandum in opposition on 12 separate bases. In other words, he said there are facts from which a reasonable trial or fact could find that the suspension was caused not by the student athletes walk off or walk out, but by the petition and by other circumstances, including the union position of Baumann and how he helped Corley become president or principal of the school. So doesn't that create an issue of fact as to the motivation which caused, factually caused, issue of fact, the suspension? No. And the reason is chronological. It didn't suspend them when the petition came in and didn't suspend them when they walked off the bus. It suspended the next day after the game was played. That's correct. Is that the only motivation for the suspension which a reasonable person could There is no credible evidence in this record other than what was thrown in as part of the overall 421 pages, which I don't want to spend a lot of time on this today, but we do have a motion to strike significant portions of that.  All of this happened in a matter of hours on the day of the game. The petition made it clear that the request was for the resignation of this coach. An option was given to mediate whatever the disputes were with the coach the next day, but the expectation clearly as set forth in these affidavits was the game will go on and you are expected to board the bus. Now it's true. There is no evidence that it was expressly stated to these students that if you don't board the bus, we will suspend you. That was a given in light of the code of conduct and the rules of engagement involving participation for this team by varsity athletes. And they didn't need to expressly say that. The decision was made by the students who, if you'll note at the bottom of their petition, stated we will not be approached individually. This was a team decision and we will be addressed as a team. And they were addressed as a team during that meeting and the team caucused. If you'll notice from this record, during that meeting the team excused the two administrators and said we want to discuss this as a team and they did. The administrators came back and the team said we are not going to play. And that was the decision made that resulted in a significant disruption that evening. A 50 point loss in this varsity basketball game. There were two games left in the season. And the team members sat in the stands and watched this game. Is there anything in the record about the importance of basketball for the school's overall standing or how students view whether their team wins or loses? Is that necessary? Should stuff like that be in the record or not? I don't believe so, your honor. And let me say I don't believe we have express evidence from the administrators or other students about the significance of varsity sports to this school district. We do have evidence in the affidavits of the administrators about the importance of maintaining the game schedule, the relationships with another school district, in this case Rainier. And we do have evidence certainly that from their standpoint this was a significant game. This was part of the overall athletic program. And after all, and I believe there is evidence in this affidavit as well, that playing sports in the first place is a privilege. It's not part of the regular school curriculum. And none of these students of course was suspended from school itself. The punishment here is the elimination of the privilege of playing on this basketball team which they forfeited by not getting on the bus and playing a significant game. So what happened after the suspension? Then did the junior varsity play the rest of the season? Yes. How much longer was there? There were two games left after this one. So the only suspension was from the team? That's correct. And did everybody who refused to get on the bus receive that punishment? No. Who did not? Well let me put it this way. There is one student who signed the petition, Christopher Soames, who got on the bus, played the game, and was not suspended. Which we believe is further proof that the reason for the suspension was not boarding the bus. The one who did play, and yet he signed the petition, was not suspended. And was there anybody who didn't sign the petition and didn't board the bus who was not suspended? No. And the game was played by the balance of the junior varsity members, junior varsity players, and those other varsity players, including Mr. Soames. And they didn't make the playoffs? No, they did not make the playoffs. But they're a heck of a team for next year. It became a building year, Your Honor. Under these circumstances, we believe that the teaching of Tinker, which is that even if the speech is protected, if it results in disruptive impacts, the district may discipline. Let me ask you, you said that there was no need to give notice to the students of the consequence of their refusal to, or decision not to board the bus and play the game. Where did that notice come from? Why would they understand that to be the case? They would understand that by the circumstances under which they signed up to be varsity athletes in the first place. There's evidence in this record about the requirement that they board the bus to play away games. That's in the record. There's a code of conduct that they sign as varsity athletes. Boarding the bus under those circumstances really goes to the issue of whether each parent should take his kid to the ball game rather than kids going to get on the bus. That's the safety of the administrator. I think that is correct, Your Honor. And I'm reminded also of the CARP decision that the court found in that case that the conduct itself was protected. This was carrying signs in a district regarding the renewal of a given teacher, that that was protected conduct. But the court pointed out if the district had disciplined those students for going to their cars to get the signs to demonstrate with, that would have been justifiable discipline. What we have here are a series of rules applicable to varsity athletes. And they don't need to be, in our view, spelled out. And yet when you look at the rules, it's rather unclear that you must play in that game or there will be consequences even though it was not expressly stated. But we don't think it had to be. Your Honor, we believe the significant differentiating fact or feature of this case for many of the student speech cases is that they involve preemptive decisions by administrators to restrain speech before the disruption occurs. In many of these cases, the Levine case, for example, involving the poem written by the student that had violent imagery and sexual imagery. Very difficult decisions for administrators whether to restrain that speech on a fear that something might happen, that something might disrupt the educational program. And in that case, of course, this court found that the district could restrain that speech because of the nature and the graphic violence of that poem. But here the disruption had already occurred by the time the discipline happened. This was not preemptive. The school district did not suspend these athletes for presenting this petition. And we agree that had that occurred, had discipline taken place by the mere presentment of this petition, we would be in a different case. The question in my mind is whether they had fair warning from the code of conduct or other information they had that not warning the bus would result in their suspension from the team in the circumstances presented. I'm giving them all the information they need to know. I would say that these are not elementary students. They're not even middle school students. These are 17 and 18 year olds. We may not be an iconic B Myers employment setting. I realize different standards apply, but these are not children either. And so from the four corners approach of this record, I would suggest to you that of all messages that did not need to be Thank you very much. Thank you. I'll give you a minute or two to respond. I want to try to just synthesize something that Judge B raised about other inferences concerning Bay. I'm sorry. Forgive me. I'm sorry. And I'm going to I'm going to butcher another name here in just a moment. So I'm going to apologize in advance. But there are a couple of cases that haven't been mentioned. There are numerous inferences that are reasonably raised by the evidence concerning what motivated the administrators to suspend. We haven't touched on the evidence that after the basketball coach checked himself out because he was grieving over this, he went and called the assistant coach that morning, said he had talked to the administrator, said he had been given a choice. He could either resign or they could make the kids either board the bus or they couldn't play that night. And what he told the assistant coach that morning, that morning, the morning of the petition, is that I want to corner the SOBs. And I use the acronym out of respect for the court. I want to find out who my backstabbers are. This is the same value. There are only 10 out of 12 people who presented the petition. Well, but what it shows is the animus. It shows it shows that we talk about cornering somebody. How about this? You give somebody an option. You don't explain there's any consequence for it. You present it as something they can voluntarily do. They take that option, not knowing the coach wasn't going to coach that night. And the evidence is if they had simply been told by the principal that Baughman checked himself out, he's so overwhelmed by grief, you can play tonight because Baughman's not going to coach. They would have played. Now, hold on. That is totally against the language of the petition. They didn't say we want Baughman kicked off for this ballgame. They said we would like to formally request the immediate resignation of Coach Jeff Baughman. They want him gone for the season. No, no, Judge, what I'm saying. No, no. My point is this. That day, the administrator knew that the coach was not going to coach that night. He had excused himself due to stress. The students were not told by the administrator when making this choice that, oh, by the way, if you want to know that you could play tonight and not be coached by Baughman. My point of this is it was, in fact, cornering them. The next day, when the parents are first alerted and come to talk to the administrators, the suspension isn't up for discussion. Now, under the Kaiser case, which Judge Gould, you participated in, there's three potential areas of evidence that are sufficient to create a fact question on whether or not. I think we know the law constitutes facts. Do you have anything else? No, I'm sorry. But I just think there is a fact question as to what motivated. Okay. Thank you, counsel, for arguments and an interesting case. We appreciate the argument and the case is submitted.
judges: Fisher, Gould, Bea